**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13 C 7346 |
| v. | ) ) | Judge Joan H. Lefkow |
| ELWOOD ENTERPRISES, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Slep-Tone Entertainment Corporation ("Slep-Tone") filed a two-count complaint

(dkt. 1) against defendant Elwood Enterprises, Inc. ("Elwood"), asserting claims for trademark

infringement and unfair competition. Elwood has moved to dismiss the complaint for failure to

state a claim and failure to join an indispensable party under Federal Rules of Civil Procedure

12(b)(6) and 12(b)(7). (*See* dkt. 16 ("Mot.").) For the following reasons, the motion is denied.[1]

## BACKGROUND[2]

Slep-Tone, a North Carolina corporation, owns two United States Trademarks[3] for the

mark "SOUND CHOICE," along with two trademarks[4] for the display mark 

(together, the "Sound Choice marks"). Slep-Tone places these marks on the karaoke

---

[1]     The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Elwood resides within this district.

[2]     The facts in the background section are taken from the complaint and exhibits attached thereto and the court draws all reasonable inferences in Slep-Tone's favor. *See Virnich* v. *Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[3]     U.S. Trademark Registration Nos. 1,923,448 and 4,099,045.

[4]     U.S. Trademark Registration Nos. 2,000,725 and 4,099,052.

accompaniment tracks that it creates and then sells or licenses the tracks to professional karaoke

operators, venues that operate their own karaoke systems, and home users to sing karaoke.

Elwood operates the Mecca Supper Club ("Mecca") in Chicago. One draw of Mecca is

its karaoke entertainment service. Elwood contracts with a third party to provide this service for

its clients "as an inducement for their patronage and purchase of food, drink, and other

concessions." (Compl. ¶ 10.) The third party "karaoke operators," or karaoke disc jockeys

("KJs"), with whom Elwood contracts play "karaoke accompaniment tracks" with which

Mecca's patrons sing along. (*Id.* ¶ 17.) Much of the content played at Elwood was originally

created by Slep-Tone and is branded with Slep-Tone's marks. But the actual tracks played are

not Slep-Tone's tracks. They are tracks that the KJs duplicated from an original or non-original

source, or acquired from another person who did so, without Slep-Tone's authorization. As a

result, Slep-Tone does not realize any royalty fees on these "counterfeit karaoke accompaniment

tracks." (*Id.* ¶ 26.) Elwood, on the other hand, "realized substantial revenues and profits from

the sale of concessions to patrons during the performance of karaoke shows at which counterfeit

karaoke accompaniment tracks were used and counterfeits of the Sound Choice Marks were

displayed." (*Id.* ¶ 29.) Moreover, Slep-Tone alleges that this practice has caused confusion

among Elwood's customers, who believe that because the Sound Choice marks appear on the

karaoke tracks, they were in fact produced by Slep-Tone. By permitting its KJs to play

accompaniment tracks pirated from another manufacturer, Elwood "permitted the display of the

words, names, and symbols of the other manufacturer in connection with the Defendant's

karaoke services." (*Id.* ¶ 69.)

Elwood has the right and ability to control whether its contractors use authentic or

counterfeit karaoke materials. Slep-Tone and its affiliates have informed Elwood of the

infringing and counterfeit character of its contractors' accompaniment tracks and offered Elwood

the opportunity to enter into its Verified Compliance Safe Harbor program or other certification

programs. But Elwood has refused to participate. As a result of these communications,

however, Elwood has actual knowledge of the infringing and counterfeit nature of its

contractors' karaoke materials. By contracting with these "pirate karaoke operator(s)," Slep-

Tone alleges, Elwood reduces its own costs while depriving Slep-Tone of its royalty payments.

(*Id.* ¶ 45.) Pirate karaoke operators also have reduced Slep-Tone's sales generally, "as would-be

purchasers of the Plaintiff's legal products eschew those products in favor of obtaining

counterfeit product at a greatly reduced cost." (*Id.* ¶ 49.) Slep-Tone asserts that the

counterfeiting has caused it damages in excess of $100,000.

Slep-Tone asserts two counts in its complaint, trademark infringement and unfair

competition in violation of the Trademark Act of 1946 ("the Lanham Act"), 15 U.S.C. § 1051 *et*

*seq.* Slep-Tone seeks injunctive and monetary relief.

## ANALYSIS

## I. Motion to Dismiss Under Rule 12(b)(6)

### A. Legal Standard

In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the

plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.

*Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the

complaint must not only provide the defendant with fair notice of a claim's basis but must also

establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S.

Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a

right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

### B. Trademark Infringement

Elwood's first argument is that the complaint fails to allege any claims for direct, contributory, or vicarious trademark infringement.

The Lanham Act provides in relevant part that a plaintiff may bring a civil action against

[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activity by another person.

15 U.S.C. § 1125(a). Thus, in order for Slep-Tone to survive a motion to dismiss, it must allege (a) that its marks are protectible, (b) that Elwood used the marks in commerce, and (c) that its use of the marks is likely to cause confusion. *See Ty, Inc.* v. *Jones Grp., Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).

### 1. Use in Commerce & Confusion

Elwood asserts that Slep-Tone's complaint fails to allege that Elwood used the Sound Choice mark in commerce, pointing to the paragraph alleging that the acts attributable to Elwood "are of a commercial nature, in that the acts were principally motivated by the transfer of money by, between, and among the various participants in the karaoke shows in connection with services provided." (Compl. ¶ 31.) This is disingenuous, as Slep-Tone's allegations go beyond those set forth in this single paragraph. It explains that Mecca uses karaoke entertainment services "as an inducement for [its customers'] patronage and purchase of food, drink, and other

4

concessions." (*Id.* ¶ 10.) Moreover, it alleges that Elwood "realized substantial revenues and profits from the sale of concessions to patrons during the performance of karaoke shows at which counterfeit karaoke accompaniment tracks were used and counterfeits of the Sound Choice Marks were displayed." (*Id.* ¶ 29.) For purposes of surviving a motion to dismiss, Slep-Tone has alleged sufficiently that Elwood uses the offending marks "in commerce." *See Slep-Tone Entm't Corp.* v. *Shenanigans Lounge et al.*, No. 6:12-cv-1236, 2013 WL 1768444, at *2 (D. Or. Feb. 22, 2013) (statements that "bars and other venues" use karaoke "to entice customers to enter and remain so that they will purchase drinks or other goods and services allowing the bar or venue to profit" sufficiently alleged "that defendant has used the plaintiff's trademarks in commerce in connection with the sale of goods and services") (quotation marks and citation omitted), *report and recommendation adopted in whole*, 2013 WL 1767727 (D. Or. Apr. 20, 2013); *see also Glovaroma, Inc.* v. *Maljack Prods., Inc.*, No. 96 C 3985, 1998 WL 102742, at *8 (N.D. Ill. Feb. 26, 1998) ("Generally, courts afford a liberal construction to [the Lanham Act's] commerce requirement.").

Elwood next argues that the complaint fails to adequately allege a likelihood of confusion in the relevant market. Slep-Tone alleges likelihood of confusion among participants in karaoke shows, not among the KJs who represent the market for Slep-Tone's products. Because "relevant confusion is confusion among the trademark owner's customers in the trademark owner's channels of trade," Elwood contends there can be no confusion here "as a matter of law." (Mot. at 8-9.)

But the cases on which Elwood relies are distinguishable because they involve two different products being sold in two different markets. *See Elec. Design & Sales, Inc.* v. *Elec. Data Sys. Corp.*, 954 F.2d 713, 719 (Fed. Cir. 1992) (no likelihood of confusion between mark

used on computer services and similar mark used on power supplies and battery chargers); *In re the W.W. Henry Co.*, 82 U.S.P.Q. 2d 1213, at *5 (T.T.A.B. 2007) (no likelihood of confusion between one mark for chemical filler marketed and sold to plastic manufacturers and similar mark used for drywall and cement patch compound sold in hardware stores).

Here, the two markets are not for two separate products, but instead the same product being sold in two separate markets. Slep-Tone explains Mecca patrons who engage in karaoke "are also Slep-Tone's potential customers, whose demand Slep-Tone could satisfy through its own sales and licensing activities" (dkt. 21 ("Resp.") at 4), and whose business comprises a portion of Slep-Tone's revenues. (Compl. ¶ 41.) Elwood responds that if the patrons were interesting in purchasing Slep-Tone's products after enjoying a karaoke shows, "they would actually gravitate towards the plaintiff if they were always seeing their trademark and not cause any issue with Plaintiff[']s sales." (Dkt. 22 ("Reply") at 4.) But according to Slep-Tone, the patrons may not do so because "[i]n most if not all cases, the counterfeit karaoke accompaniment tracks are degraded from the original quality, such that the high quality of the Plaintiff's karaoke accompaniment tracks is no longer as evident as it is when original media are used." (Compl. ¶ 28.) Slep-Tone has sufficiently alleged likelihood of confusion among its potential customers due to Elwood's infringing activities.

### 2.    Contributory Infringement

Elwood argues that Slep-Tone cannot succeed under a theory of contributory infringement. To prove contributory trademark infringement, Slep-Tone must demonstrate that Elwood (1) intentionally induced a third party to infringe Slep-Tone's mark; or (2) supplied a product to a third party with actual or constructive knowledge that the product was being used to directly infringe the mark. *See Inwood Labs., Inc.* v. *Ives Labs., Inc.,* 456 U.S. 844, 854, 102 S.

Ct. 2182, 72 L. Ed. 2d 606 (1982); *Hard Rock Cafe Licensing Corp.* v. *Concession Servs., Inc.,* 955 F.2d 1143, 1148 (7th Cir.1992); *SB Designs* v. *Reebok Int'l, Ltd.,* 338 F. Supp. 2d 904, 911-12 (N.D. Ill. 2004). Relying on common law notions of the responsibilities of a licensor or landlord, the Seventh Circuit has ruled that contributory infringement encompasses liability in certain situations for people who knew of the infringement, even if they "do not actually manufacture or distribute the good that is ultimately palmed off as made by someone else." *Hard Rock*, 955 F.2d at 1148. Contributory infringement requires proof of direct infringement by a third party, as well as the defendant's intent and knowledge of the wrongful activities of its distributors. *David Berg & Co.* v. *Gatto Int'l Trading Co., Inc.,* 884 F.2d 306, 311 (7th Cir.1989). "While a supplier of goods or services has no affirmative duty to seek out and prevent trademark violations, it has a duty to understand what a reasonably prudent person would understand." *Medline Indus., Inc.* v. *Strategic Commercial Solutions, Inc.*, 553 F. Supp. 2d 979, 991 (N.D. Ill. 2008) (citing *Hard Rock,* 955 F.2d at 1149).

Elwood argues that this is not the type of case envisioned by the Seventh Circuit in *Hard Rock*. The court does not agree. The expansion of the *Inwood* test for contributory liability in *Hard Rock* "is premised on a defendant's direct control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *SB Designs*, 338 F. Supp. 2d at 913 (citing *Hard Rock*, 955 F.2d at 1149; *Lockheed Martin Corp.* v. *Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999)). Slep-Tone has alleged that Elwood hires the KJs and can control whether they use authentic or counterfeit materials. (Compl. ¶¶ 2, 14, 32.) Moreover, Slep-Tone has alleged that Elwood had actual knowledge that KJs operating at Mecca use infringing materials but refused to take appropriate action.[5] (*Id.* ¶¶ 33-38.) It has also sufficiently alleged that the

---

[5]     Elwood argues in its reply brief that when it received a letter from Slep-Tone, it investigated all of its KJs and found they "no longer used Slep-Tone products of any kind during their shows." (Reply at

KJs themselves are infringing Slep-Tone's marks under the Seventh Circuit's seven-factor test.[6]

The court is not the first to find that Slep-Tone's claims against a bar or restaurant that provides

karaoke entertainment adequately allege contributory infringement.  *See, e.g., Slep-Tone*

*Entertainment Corp.* v. *Snappers Bar & Grill, Inc.*, No. 8:12-cv-157-T-30, 2012 WL 4174864, at

*2 (M.D. Fla. Sept. 19, 2012) ("Slep-Tone alleges that Snappers was aware of the karaoke

operators' unlawful activity and continued to utilize their services at its establishment.  In other

words, a finder of fact could determine that Snappers had the ability to control whether its

karaoke providers/operators were performing using lawful, properly licensed accompaniment

tracks at its establishment.").  The motion is denied on these bases.

### 3.    Fair Use Defense

Elwood also insists that its activities are protected by the nominative fair use defense.

"The nominative fair use defense is a non-statutory doctrine that applies when the defendant uses

the plaintiff's trademarks to refer to the plaintiff's goods or services in a non-confusing manner."

*DeVry, Inc.* v. *Univ. of Med. & Health Sci.-St. Kitts*, No. 08 C 3280, 2009 WL 260950, at *5

(N.D. Ill. Feb. 3, 2009) (citing *New Kids On the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302,

---

22.)  Whether this is true is a question of fact that is not appropriate for resolution on a Rule 12(b)(6) motion.  The court also rejects Elwood's argument that the complaint is devoid of allegations that Elwood continued its contributory infringement after receiving the letter, as the court interprets the complaint as alleging that Elwood knew of the infringement by way of the letter but failed to stop it.  (Compl. ¶¶ 36-38.)

[6]      The seven factors used to evaluate whether a likelihood of confusion exists in trademark and service mark cases are (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of plaintiff's mark; (6) whether any actual confusion exists; and (7) whether the defendant intends to palm off its products as those of the plaintiff.  *Ty,* 237 F.3d at 897-98 (citation omitted).  Although no one factor is dispositive, the similarity of the marks, the defendant's intent, and evidence of actual confusion are weighted heavily.  *Id.*  Here, Slep-Tone alleges a majority of these factors: (1) KJs operating at Mecca use Slep-Tone's marks without permission (Compl. ¶¶ 22, 53); (2) on products copied from Slep-Tone's (*id.* ¶¶ 19-24); (3) in the market Slep-Tone itself has sought to develop (*id.* ¶¶ 41-42); and (4) in a manner likely to cause confusion to consumers who believe the lower-quality tracks are, in fact, Slep-Tone's (*id.* ¶¶ 28, 41, 60).

308 (9th Cir. 1992)).  The defense covers situations "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids*, 971 F.2d at 308.  The Seventh Circuit has not directly addressed the viability of this defense, but courts in this district that have used the Ninth Circuit's test as set forth in *New Kids*. *See, e.g., Devry*, 2009 WL 260950, at *5.  Under this three-part test, the nominative fair use defense applies if (1) the product or service in question is one not readily identifiable without use of the trademark; (2) only so much of the mark or marks as were reasonably necessary to identify the product or service were used; and (3) the user did not do anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id.* (quoting *New Kids*, 971 F.2d at 308).

Elwood cannot prevail on this defense.  First, courts in this district have explained that it is inappropriate for consideration in a Rule 12(b)(6) motion. *See, e.g., Americash Loans, LLC* v. *AO Ventures, LLC*, No. 08 C 5147, 2009 WL 743010, at *4 (N.D. Ill. Mar. 19, 2009) (review of facts and evidence involved in ruling on nominative fair use defense "premature" at motion to dismiss stage); *DeVry*, 2009 WL 260950, at *5 (whether nominative fair use defense applied "is a factual determination that the Court will make after discovery").[7]  Second, even if the court were to consider the defense on its merits, it would fail.  Slep-Tone alleges that Elwood contributed to trademark infringement by allowing KJs who post Slep-Tone's mark on their bootleg version of Slep-Tone's products to operate at Mecca.  This *does* suggest "affiliation, sponsorship, or endorsement." *See R.J. Reynolds Tobacco Co.* v. *Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2001 WL 747422, at *6 (N.D. Ill. June 29, 2001).  The defense fails.

### 4. *Dastar* Defense

---

[7]    In the face of this precedent, Elwood's insistence that some district courts in the Ninth Circuit have dismissed a case on a 12(b)(6) motion based on the nominative fair use defense is unconvincing.

Elwood argues that the complaint is barred by *Dastar Corp.* v. *Twentieth Century Fox Film Corp.*, 539 U.S. 23, 38, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003). In *Dastar*, the Supreme Court held that a plaintiff cannot use trademark law to obtain rights over the *content* of an artistic work. *Id.* That, in effect, "would amount to an indefinite extension of a copyright. . . . *Dastar* tells us not to use trademark law to achieve what copyright law forbids." *Eastland Music Group, LLC*, v. *Lionsgate Entertainment, Inc.*, 707 F.3d 869, 872 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 204, 187 L. Ed. 2d 46 (2013).

*Dastar* is distinguishable from the case at hand. There, the defendant took the plaintiff's product and, after altering it, put the defendant's own mark on it. Here, Elwood contracted with KJs who pass off inferior versions of Slep-Tone's products by pasting Slep-Tone's own mark on them. Moreover, as explained in another suit involving Slep-Tone, "regardless of the copyright status of these videos, Slep-Tone alleges facts about the misuse of its trademark on products it did not create, namely because Slep-Tone's registered trade dress and trademark appear on [the KJ's tracks]. These are cognizable claims under the Lanham Act." *Expressway Music, Inc.* v. *Slep-Tone Entm't Corp.*, No. 12 Civ. 834, 2013 WL 5345969, at *3 (S.D.N.Y. Sept. 23, 2013). The *Dastar* defense fails.

### B.    Unfair Competition

Elwood asserts that Slep-Tone's unfair competition claim fails for the same reasons that its Lanham Act claim fails. Instead, it survives for the same reasons the Lanham Act claim survives. "As a general rule . . . the same facts which would support an action for trademark infringement [under Section 32(1)] would also support an action for unfair competition [under Section 43(a)]" of the Lanham Act. *7-Eleven, Inc.* v. *Spear*, No. 10 C 6697, 2011 WL 830069, at *5 n.3 (N.D. Ill. Mar. 3, 2011) (quoting *Boston Prof'l Hockey Ass'n* v. *Dallas Cap & Emblem*

10

*Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975)) (brackets in original); *see also James Burrough, Ltd.* v. *Sign of Beefeater, Inc.*, 540 F.2d 266, 274 n.16 (7th Cir. 1976) (claims for unfair competition "are absorbed in a finding that trademark infringement . . . exists").

### III.    Motion to Dismiss Under Rule 12(b)(7)

Finally, Elwood argues that the complaint must be dismissed pursuant to Rule 12(b)(7) because it fails to join indispensable parties, namely the "'Contractor(s)' who Plaintiff believes infringed on the Trademark." (Mot. at 20.)  It goes on to assert, "Without joining the 'Contractor(s)' we cannot have access to the marks that were allegedly used, or determine whether any intent to infringe exists," which is "most important" because "it appears that the Complaint is based upon either vicarious or contributory liability." (*Id.*)

On a Rule 12(b)(7) motion to dismiss for failure to join a required party under Rule 19, the court conducts a two-step analysis.  First, the court determines whether the party is "required" under Rule 19(a).  *Askew* v. *Sheriff of Cook Cnty., Ill.,* 568 F.3d 632, 635 (7th Cir. 2009).  A party is required if joinder is feasible and (1) the court cannot accord complete relief to existing parties in the party's absence; (2) the absent party's ability to protect an interest relating to the subject of the action will be impaired; or (3) an existing party would be subject to a substantial risk of multiple or inconsistent obligations if the absent party is not joined.  Fed. R. Civ. P. 19(a)(1).  Second, if the court determines the party is required but joinder is not feasible, it must consider whether, under Rule 19(b), "equity and good conscience" require that the litigation should proceed without the absent party.  *Davis Cos.* v. *Emerald Casino, Inc.,* 268 F.3d 477, 480 (7th Cir. 2001).  The court considers the prejudice to the existing parties, the adequacy of a judgment that would be rendered without the absent party, and whether the plaintiff would have an adequate remedy if the action were dismissed.  Fed. R. Civ. P. 19(b).  "If there is no way

to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal . . . under [Rule] 12(b)(7)." *Davis*, 268 F.3d at 481 (internal quotation marks and citation omitted). The moving party has the burden of showing a party is required. *See Rotec Indus., Inc.* v. *Aecon Grp., Inc.,* 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006).

Another court treating a different one of Slep-Tone's suits has already explained that it is "immaterial whether the karaoke operators are named in the complaint. . . . Plaintiff's allegations are sufficient because they include the facts that Defendant was aware of the karaoke operators' unlawful activity and continued to utilize their services at its establishment." *Slep-Tone Entm't Corp.* v. *Il Mio Sogno, LLC,* No. 8:12-cv-1187-T-30, 2012 WL 3156582, at *1 (M.D. Fla. Aug. 3, 2012). This court agrees. Having determined that Slep-Tone asserts a claim for contributory infringement, the court finds it is not necessary that the KJs be joined for this action to proceed.[8]

## CONCLUSION

For the reasons explained above, Elwood's motion to dismiss is denied. The parties shall appear for a status conference on May 1, 2014, at 11 a.m. to report on the possibility of settlement.

Dated:    April 21, 2014

Enter:    *Joan H. Lefkow*

United States District Judge

---

[8]       As noted above, to the extent that Elwood relies on a suit that Slep-Tone is alleged to have filed against a KJ operating at Mecca and factual assertions that the KJ stopped infringing Slep-Tone's marks immediately thereafter, those are questions of fact not appropriate for resolution on a motion to dismiss.