UNITED STATES DISTRIT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-7346 |
| v. | ) ) | <u>Jury Trial Requested</u> |
| ELWOOD ENTERPRISES, INC. | ) ) ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTER CLAIMS</u>

Defendant Elwood Enterprises, Inc., by their attorneys, the Law Offices of Matthew M. Saffar, LLC answers Slep-Tone Entertainment Corporation's Complaint and states as follows:

## <u>JURISDICTION AND VENUE</u>

1. This is an action by the Plaintiff for trademark infringement and federal unfair competition in which the Defendant is accused of knowingly benefiting from the use of pirated, counterfeit karaoke accompaniment tracks belonging to the Plaintiff.

<u>ANSWER:</u> Defendants admit that this is a civil action and that the Complaint purports to state claims for trademark infringement and federal unfair competition, but deny that such claims have any basis in law or fact.

2. The Defendant's liability arises from their hiring of one or more karaoke operators who make use of pirated, counterfeit karaoke accompaniment tracks to produce karaoke shows at the Defendant's venue(s), and from continuing to hire and utilize the services of those

karaoke operator(s), having previously been informed of the infringing nature of the operator(s)' services.  The Defendant derives a significant financial benefit from the use of this pirated material in the establishment(s) it controls.

ANSWER: The Defendant denies the allegations contained in paragraph 2.

<u>JURSIDICTION AND VENUE</u>

3. This is an action for trademark infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125.  This court has exclusive Jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

ANSWER: Defendant admits that this is a civil action and that the Complaint purports to state claims under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125, but denies that such claims have any basis in law or fact.

4. This Court further has jurisdiction pursuant to 28 U.S.C. § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to the Plaintiff's Lanham Act unfair competition claim, pursuant to 28 U.S.C. §1338(b), in that the claim in joined with a substantial and related claim under the trademark laws of the United States.

ANSWER: Defendant admits that this is a civil action and that the Complaint purports to state claims under 28 U.S.C. § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to the Plaintiff's Lanham Act unfair competition claim, pursuant to 28 U.S.C. §1338(b), in that the claim in joined with a substantial and related claim under the trademark laws of the United States, but denies that such claims have any basis in law or fact.

5. This Court has supplemental jurisdiction over the Plaintiff's State-law claims pursuant to 28 U.S.C. § 1367(a), in that those state-law claims are so related to the Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

ANSWER: Defendant admits that this is a civil action and that the Complaint purports to state claims under Federal Law and that any claims under State law are purported to be related to the Federal Claims, but deny that any claims have any basis in law or fact.

6. This Court has both specific and general personal jurisdiction over the Defendant, in that the Defendant is a commercial enterprise operating one or more eating and/or drinking establishments in this State and judicial district and in that the Defendant's liability arises from their operation of those establishments in this State and judicial district.

ANSWER: Defendant admits that this Court has personal jurisdiction over the Defendant, but denies any liability in this matter.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because the Defendant resides in this State within this judicial district.

 ANSWER: Defendants admit that if this court has jurisdiction over Plaintiff's claims, venue is proper in this court.

<u>THE PLAINTIFF</u>

8. Plaintiff SLEP-TONE is a North Carolina Corporation having its principal place of business at 14100 South Lakes Drive in Charlotte, North Carolina.

ANSWER: Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

## THE DEFENDANT

9. Defendant, ELWOOD ENTERPRISES, INC. is an Illinois Corporation that operates an establishment known as "Mecca Supper Club" in Chicago, Illinois.

ANSWER: Defendant admits the allegations contained in paragraph 9.

10. The Defendant in this action operates a commercial establishment(s) to which karaoke entertainment services are provided by a third party as entertainment for the Defendant's patrons, as an inducement for their patronage and purchase of food, drink, and other concessions.

ANSWER: Defendant admits that karaoke services are provided by a third party, but otherwise denies the allegations contained in paragraph 10.

## THE RIGHTS OF THE PLAINTIFF

11. Plaintiff SLEP-TONE is the owner of U.S. Trademark Registrations No. 1,923,448 and No. 4,099,045, both for the trademark SOUND CHOICE.

ANSWER: Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

12. Plaintiff SLEP-TONE is also the owner of U.S. Trademark Registrations No. 2,000,725 and No. 4,099,052, both for the display trademark as follows:

ANSWER: Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

13. Plaintiff SLEP-TONE has, for the entire time its marks ("the Sound Choice Marks") have been federally registered provided the public, including the Defendant, with notice of its federal registrations through the consistent display of the symbol ® with its marks as used.

ANSWER: Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

<u>THE ACTIVITIES OF THE DEFENDANT AND ITS SUPPLIERS</u>

14. The Defendant has contracted with one or more suppliers known as karaoke operators who provide karaoke entertainment shows at the Defendant's Establishment(s).

ANSWER: Defendant admits the allegations contained in paragraph 14.

15. These karaoke shows consist of participatory entertainment, in which individual patrons or groups of patrons sing popular songs while accompanied by recorded accompaniment music.

ANSWER: Defendant admits the allegations contained in paragraph 15.

16. During each of the karaoke shows performed at the Defendant's establishment(s), the karaoke operator(s) caused a number of songs to be played for the purpose of accompanying individual patrons or groups of patrons while they sang.

ANSWER: Defendant objects to paragraph 16 as vague in failing to allege which karaoke operator(s) it is referring to. Based upon the objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

17. Each song within the recorded accompaniment music, together with the graphical displays of lyrics and other material synchronized to the music, is a "karaoke accompaniment track."

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

18. With respect to the Defendant's establishment(s), a substantial portion of the content
    represented on the karaoke accompaniment tracks used to put on the karaoke shows was
    originally created by Plaintiff.

ANSWER: Defendant denies the allegations contained in paragraph 18.

19. However, the Plaintiff did not create the karaoke accompaniment tracks usually used by
    the karaoke operators.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to
the truth of the allegations contained in this paragraph and therefore denies the allegation.

20. Rather, the karaoke operator(s) either made the tracks themselves by duplicating them
    from an original or non-original source or acquired the tracks from another person who
    duplicated or derived them from an original or non-original source.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to
the truth of the allegations contained in this paragraph and therefore denies the allegation.

21. The karaoke operator(s) or other persons identified in the preceding paragraph were not
    authorized to make duplicates of the Plaintiff's karaoke accompaniment tracks.

ANSWER: Defendant objects to paragraph 21 as the preceding paragraph does not identify
any karaoke operator(s) and/or persons.  Based upon the objection, Defendant is without
information or knowledge sufficient to form a belief as to the truth of the allegations
contained in this paragraph and therefore denies the allegation.

22. The karaoke operator(s) or other persons so identified were not authorized to apply the
    Sound Choice Marks to any product, including to any karaoke accompaniment track.

ANSWER: Defendant objects to paragraph 22 as no karaoke operator(s) or other persons
have been identified.  Based upon the objection, Defendant is without information or

knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

23. The karaoke operator(s) were not authorized to obtain or use duplicates of Plaintiff's karaoke accompaniment tracks.

ANSWER: Defendant objects to paragraph 23 as no karaoke operator(s) have been identified. Based upon the objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

24. The karaoke operator(s) or other persons did not pay any royalties or fees to the Plaintiff or to the upstream owners of copyright in the underlying musical works for the privilege of conducting their duplication activities.

ANSWER: Defendant objects to paragraph 24 as no karaoke operator(s) have been identified. Based upon the objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

25. The karaoke operator(s) or other persons did not pay any royalties or fees to the Plaintiff for the privilege of displaying the Sound Choice Marks during the karaoke shows.

ANSWER: Defendant objects to paragraph 25 as no karaoke operator(s) have been identified. Based upon the objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

26. As a result of the karaoke operator(s)' (or other persons') duplication activities, the
karaoke operator(s), and thus the Defendant has been supplied with counterfeit karaoke
accompaniment tracks.

ANSWER: Defendant object to paragraph 26 as no karaoke operator(s) or other person(s)
have been identified.  Notwithstanding said objection, Defendant denies have ever possessed
or being supplied with counterfeit karaoke accompaniment tracks.

27. Because the duplication activities were not undertaken with the Plaintiff's knowledge or
authorization, the Plaintiff was unable to control the quality of the counterfeit karaoke
accompaniment tracks.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to
the truth of the allegations contained in this paragraph and therefore denies the allegation.

28. In most if not all cases, the counterfeit karaoke accompaniment tracks are degraded from
the original quality, such that the high quality of the Plaintiff's karaoke accompaniment
tracks is no longer as evident as it is when original media are used.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to
the truth of the allegations contained in this paragraph and therefore denies the allegation.

29. The Defendant realized substantial revenues and profits from the sale of concessions to
patrons during the performance of karaoke shows at which counterfeit karaoke
accompaniment tracks were used and counterfeits of the Sound Choice Marks were
displayed.

ANSWER: Defendant denies the allegations contained in paragraph 29.

30. The activities of the Defendant are not isolated or sporadic occurrences, but are instead
regular activities undertaken over a long period of time, in some cases months.

<u>ANSWER:</u> Defendant objects to paragraph 30 as vague in that Plaintiff has failed to indicate what activities Plaintiff is referencing or what Plaintiff asserts is a long period of time. Based upon that objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

31. The acts attributable to the Defendant are of a commercial nature, in that the acts were principally motivated by the transfer of money by, between, and among various participants in the karaoke shows in connection with the services being provided.

<u>ANSWER:</u> Defendant objects to paragraph 31 as vague in that Plaintiff has failed to indicate what acts are being referenced and how they would be attributable to Defendant. Based upon said objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

<u>CULPABILITY OF THE DEFENDANT</u>

32. The Defendant has the right and ability to control whether its contractor(s) uses authentic or counterfeit materials to provide services.

<u>ANSWER:</u> Defendant objects to paragraph 32 as conclusory and calling for a legal conclusion. Defendant further objects to paragraph 32 as vague in that Plaintiff fails to identify which contractor(s) are being referenced. Based upon said objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

33. The Plaintiff and affiliates of the Plaintiff has informed the Defendant of the infringing and counterfeit character of their contractor(s)' karaoke accompaniment tracks.

ANSWER: Defendant objects to paragraph 33 as vague in that it fails to identify, when any notice was provided, who notice was provided to, and what notice entailed. Based upon said objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

34. The Plaintiff offered the Defendant the opportunity to enter into its Verified Compliance Safe Harbor Program, a program that protects venues from liability for the acts of their contractors in exchange for requiring their contractors to provide information about their karaoke systems to enable the Plaintiff to assess whether those contractors are operating legally.

ANSWER: Defendant admits that Plaintiff offered Defendant the opportunity to enter into its Verified Compliance Safe Harbor Program, but otherwise denies the remaining allegations in paragraph 34.

35. The Plaintiff also provides a certification program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials or not.

ANSWER:  Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

36. As a result of the Plaintiff's efforts, the Defendant has actual knowledge of the infringing and counterfeit nature of their contractor(s) karaoke materials.

ANSWER: Defendant objects to paragraph 36 as conclusory and calling for a legal conclusion.  Notwithstanding said objection, Defendant denies the allegations contained in paragraph 36.

37. Despite that knowledge, the Defendant has failed and refused to terminate the services of their contractor(s).

ANSWER: Defendant objects to paragraph 37 as vague in that Plaintiff fails to identify the referenced contractor(s). Defendant further objects to paragraph 37 as repetitive in that Defendant has denied any knowledge in paragraph 36. Based upon said objections, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

38. Despite that knowledge, the Defendant has continued to derive a significant financial benefit from the karaoke shows provided at their establishment(s).

ANSWER: Defendant objects to paragraph 38 as vague in that Plaintiff fails to define what significant financial benefit means. Based upon said objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

THE HARM TO THE PLAINTIFF

39. As a manufacturer of karaoke accompaniment tracks, the Plaintiff has expended vast sums of money to re-record popular songs in karaoke format.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

40. The Plaintiff's expenditures, which total in the tens of millions of dollars over a 27-year period, include money spent to build a world-class recording studio, to hire musicians, to acquire appropriate licenses, to manufacture compact discs, to pay ongoing royalties, and to advertise and market its products, among other items.

ANSWER:  Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

41. The Plaintiff generates revenue by selling and licensing authentic original materials on compact discs to the consumers of its products which include home users, profession karaoke operators, and venues that operate their own karaoke systems.

ANSWER:  Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

42. There is, in this judicial district and in the United States generally, a market for karaoke entertainment, in that there is a significant number of person who wish to be entertained by viewing and participating in karaoke shows.

ANSWER:  Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

43. The Defendants seek to serve that market by providing karaoke shows at their venue(s) at no or little direct cost to the patrons, in exchange for patronage that includes the purchase of food, alcohol, and/or other concessions.

ANSWER: Defendant denies the allegations of paragraph 43.

44. In order to serve that market, the Defendant has contracted, at some expense, with professional karaoke operator(s) who provide karaoke shows to the patrons at the Defendant's establishment(s).

ANSWER: Defendant admits that it has contract with professional karaoke operators at some expense, but otherwise denies the allegations contained in paragraph 44.

45. Rather than paying fair-market prices for the services of karaoke operators who have legally acquired karaoke accompaniment tracks for use in providing karaoke shows, the Defendant has instead contracted with pirate karaoke operator(s).

ANSWER: Defendant denies the allegations contained in paragraph 45

46. The Defendant has benefitted from below fair-market pricing for the services they receive, because pirate karaoke operators can afford to charge less money for their services than fully legal karaoke operators can afford.

ANSWER: Defendant denies the allegations contained in paragraph 46.

47. The pirate karaoke operators can afford to charge less because, unlike the fully legal operators, the pirate operators did not spend the thousands of dollars necessary to acquire legal music, yet they nonetheless offer the same songs as, if not many more songs than, the legal karaoke operators.

ANSWER:  Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

48. The Defendant's willingness to pay pirate karaoke operator(s) to provide karaoke shows at their establishment(s), rather than hiring legal operators at a higher expense, encourages previously legal operators to become pirate operators in order to reduce their costs and maintain profitability.

ANSWER: Defendant denies the allegations contained in paragraph 48.

49. As a direct result of the Defendant's participation in the market for pirate karaoke, the Plaintiff has experience significantly reduced sales of its legitimate products, as would-be purchasers of the Plaintiff's legal products eschew those purchases in favor of obtaining counterfeit product at a greatly reduced cost.

ANSWER: Defendant denies any participation in the market for pirate karaoke and otherwise is without information or knowledge sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph and therefore denies the allegation.

50. The Defendant's knowing use and benefit from materials pirated from the Plaintiff's original materials, has deprived the Plaintiff of revenue it would have received from the purchase or licensing of original materials.

ANSWER: Defendant denies the allegations contained in paragraph 50.

PIRACY INVOLVING KARAOKE TRACKS OF OTHERS

51. The pirate karaoke operator(s) who provide services to the Defendant do not limit their piracy to the Plaintiff's tracks.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

52. Specifically, the pirate karaoke operator(s) has also committed acts of piracy of other manufacturers' accompaniment tracks, utilizing the words, names, symbols, and other devices associated with those manufacturers, upon information and belief and without authorization.

ANSWER: Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

53. The Defendant's knowledge of the infringing character of their contractor(s)' activities with respect to SOUND CHOICE ®-branded karaoke accompaniment tracks applies with equal force to tracks belonging to other manufacturers.

ANSWER: Defendant denies the allegations contained in paragraph 53.

DAMAGES

54. The Defendant's unauthorized use of and benefit from the use of the Sound Choice Marks has damaged the Plaintiff both in the aggregate and individually.

<u>ANSWER:</u> Defendant denies the allegations contained in paragraph 54.

55. The Defendant has damaged the Plaintiff in an amount of at least $100,000.00.

<u>ANSWER:</u> Defendant denies the allegations contained in paragraph 55.

56. Moreover, by exerting illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the use of pirated material belonging to the Plaintiff and to other manufacturers, the Defendant has cost the Plaintiff in excess of $100,000 in revenue from legitimate sources crowded out of the market by the Defendant's piracy.

<u>ANSWER:</u> Defendant denies the allegations contained in paragraph 56.

<u>FIRST CLAIM FOR RELIEF</u>
<u>TRADEMARK INFRINGEMENT</u>

57. The Defendant knowingly benefited from the use of, and thorough one or more contractors used, a reproduction, counterfeit, or copy of the Sound Choice Marks in connection with the provision of karaoke entertainment services, by displaying and permitting to be displayed the production, counterfeit, or copy of the Sound Choice Marks during the provision of those services.

<u>ANSWER:</u> Defendant denies the allegations contained in paragraph 57.

58. The Defendant's use of the Sound Choice Marks was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

<u>ANSWER:</u> Defendant objects to paragraph 58 as it calls for a legal conclusion.

Notwithstanding said objection, Defendant denies the allegations contained in paragraph 58.

59. The Plaintiff did not license the Defendant to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks in connection with the services provided at their establishment(s).

ANSWER: Defendant admits that it has no legal relationship with the Plaintiff of any kind, but otherwise denies all other allegations in paragraph 59.

60. Use of the Sound Choice Marks in the manner attributable to the Defendant is likely to cause confusion, or to cause mistake, or to deceive the Defendant's customers into believing that the services those customers are receiving are being provided with the authorization of the Plaintiff using bona fide, legitimate authorized karaoke accompaniment tracks.

ANSWER: Defendant denies the allegations contained in paragraph 60.

61. The acts of the Defendant are willful and knowing.

ANSWER: Defendant objects to paragraph 61 as vague in that Plaintiff fails to indicate what acts of Defendant are in questions. Based upon said objection, Defendant is without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies the allegation.

62. The Plaintiff has been damaged by infringing activities of the Defendant.

ANSWER: The Defendant denies the allegations contained in paragraph 62.

63. Unless enjoined by the Court, the Defendants' infringing activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

ANSWER: Defendants deny the allegations contained in paragraph 63.

SECOND CLAIM FOR RELIEF
UNFAIR COMPETITION UN 15 U.S.C.§ 1125(a)

64. On each occasion when they permitted a SLEP-TONE accompaniment track to be played during a karaoke show, the Defendant permitted the display of the Sound Choice Marks in connection with the Defendant's karaoke entertainment services.

ANSWER: Defendant denies the allegations contained in paragraph 64.

65. The display of the Sound Choice Marks, is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing falsely, that SLEP-TONE sponsored or approved the Defendants' services and commercial activities.

ANSWER: Defendants denies the allegations contained in paragraph 65.

66. The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by SLEP-TONE and purchased by the Defendant's contractor(s) for use in providing karaoke entertainment services.

ANSWER: Defendant denies the allegations contained in paragraph 66.

67. The Defendants' use of the Sound Choice Marks in this fashion would have inured to the benefit of the Plaintiff if the Defendant's contractor(s) had legitimately acquired genuine Sound Choice discs instead of counterfeiting them or acquiring the counterfeit goods, in that the Plaintiff would have received revenue from such sales.

ANSWER: Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore deny the allegation.

68. Because SLEP-TONE has been denied this revenue, it has been damaged by the
Defendants' uses.

ANSWER: Defendant denies the allegations contained in paragraph 68.

69. On each occasion when they permitted an accompaniment track pirated from another
manufacturer to be played during a karaoke show, the Defendant permitted the display of
the words, names, and symbols of the other manufacturer in connection with the
Defendant's karaoke services.

ANSWER: Defendant denies the allegations contained in paragraph 69.

70. Upon information and belief, the Defendant's contractor(s)' use of those words, names,
and symbols falsely designates the other manufacturer as the origin of the pirated track,
when in fact the pirated copy was made or acquired by the contractor(s).

ANSWER:  Defendant is without information or knowledge sufficient to form a belief as to
the truth of the allegations contained in this paragraph and therefore denies the allegation.

71. The display of these false designations of origin is likely to cause confusion, or to cause
mistake or to deceive those present during the display, in that those present are likely to
be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and
authentic materials that the Defendant's contractor(s) acquired in a legitimate manner.

ANSWER: Defendant denies the allegations contained in paragraph 71.

72. The display of the false designations of origin is also likely to cause confusion or to cause
mistake, or to deceive those present during the display, in that those present are likely to
be deceived into believing falsely, that the works being performed were sold by those
manufacturers and purchased by the Defendant's contractor(s).

ANSWER: Defendant denies the allegations contained in paragraph 72.

73. The Defendants' use of the false designations of origin in this fashion damages the Plaintiff by enabling the Defendant, through contractor(s) to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately, including the Plaintiff's legitimate customers.

ANSWER: Defendant denies the allegations contained in paragraph 73.

74. The consequential denial of revenue from a legitimate market for the Plaintiff's customers' services prevents the Plaintiff's customers from making purchases of material from the Plaintiff and is thus a denial of revenue to the Plaintiff.

ANSWER: Defendant denies the allegations contained in paragraph 74.

75. Because Slep-Tone has been denied this revenue, it has been damaged by the Defendant's false designation of origin relating to other manufacturers.

ANSWER: Defendant denies the allegations contained in paragraph 75.

76. Unless enjoined by the Court, the Defendants' unfair competition activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

ANSWER: Defendants deny the allegations contained in paragraph 76.


PRAYER FOR RELIEF

WHEREFORE, Plaintiff SLEP-TONE prays for judgment against the Defendant and that the Court:

A. Find that the Defendant, by virtue of its knowledge, ability to control, and benefit from acts of infringement of the of the federally registered Sound Choice Marks, directly committed by its contractor(s), is vicariously or otherwise indirectly and derivatively liable for those acts;

B.  Find that the Defendant has engaged in unfair competition against Plaintiff SLEP-TONE in violation of 15 U.S.C. § 1125(a);

C.  Enter judgment against each of the Defendant and in favor of SLEP-TONE;

D.  Find that the Defendant's activities were in all respects conducted willfully and for profit;

E.  Award to SLEP-TONE the Defendant's profits and the damages sustained by SLEP-TONE because of the Defendant's conduct in fringing the Sound Choice Marks, or in the alternative statutory damages per trademark infringed by counterfeiting in an amount not less than $100,000 for each establishment in which counterfeit karaoke accompaniment tracks were used to provide karaoke entertainment services;

F.  Award to SLEP-TONE the Defendant's profits and the damages sustained by SLEP-TONE because of the Defendants acts of unfair competition under 15 U.S.C. § 1125(a) in an amount no less than $100,000, based upon the conduct of the Defendant'

G.  Grant SLEP-TONE preliminary and permanent injunctive relief against further false designations of origin by the Defendant with respect to words, names, and symbols associated with other manufacturers;

H.  Award SLEP-TONE its costs of suit and attorney's fees, to the extent not awarded above; and

I.  Grant SLEP-TONE such other and further relief as justice may require.

<u>ANSWER:</u> Defendant denies Plaintiff is entitle to any relief.

<u>AFFIRMATIVE DEFENSES</u>

I.      First Affirmative Defense


Defendant has no knowledge of any infringing acts committed by any contractor(s) performing karaoke services at its establishment.  Defendant upon receiving suit conferred with any and all contractors and confirmed that none of Plaintiff's products were used or to be used at Defendant's establishment.  If any of Plaintiff's products were used at any point in time, it was without the knowledge of Defendant.  Defendant does not have the ability to control where any of its contractors purchase materials and is unable to verify the origin or any products used by his contractors.  Based upon this lack of control over the actions of a third party, Defendant cannot be liable for any tortious actions taken outside of the control of Defendant.


II.     Second Affirmative Defense


Plaintiff's claims are barred under the doctrines of laches and/or acquiescence, arising out of Plaintiff's knowledge of Defendant's contractor(s) open and notorious use of any marks for commercial purposes long before filing suit based upon Plaintiff selling the subject discs to the Defendant's contractors for commercial use, coupled with Plaintiff's failure to take any actions to notify Defendant of any issues regarding usage and/or licensing of products sold without a licensing agreement.

III.    Third Affirmative Defense

Plaintiff's claims are barred under the doctrine of unclean hands, arising out of Plaintiff's commission of fraud before the USPTO and conspiring to defraud Defendant and others similarly situated, as more fully set forth in Defendants' Counterclaims.

IV.    Fourth Affirmative Defense.

Plaintiff's claims are barred due to the commission of fraud before the United States Patent and Trademark Office where on information and belief, Plaintiff made false material representations of fact in the application for both registrations in that Plaintiff asserted that they conducted entertainment exhibitions in the nature of karaoke shows in commerce beginning on or about July 21, 2010.  Further, on information and belief, Plaintiff has never conducted entertainment exhibitions in the nature of karaoke shows in commerce.  Plaintiff knew when filing its application that it had never conducted entertainment exhibitions in the nature of karaoke shows in commerce. The Plaintiff intended to deceive the United States Patent and Trademark Offices (hereafter "USPTO") when it asserted that it began use of the mark in commerce for conducting entertainment exhibitions in the nature of karaoke shows in commerce in order to obtain a registration.  Plaintiff's false statements to the USPTO were made to defraud Defendant and those similarly situated.

V.      Fifth Affirmative Defense


Plaintiff's claims are further barred based upon nominative fair use.  Any marks registered to

the Plaintiff are not readily known to the general public.  At any and all relevant times,

Defendant's contractor(s) only used as much of the mark as was necessary to identify the source

of the tracks and subject material.  Defendant never used the mark for sponsorship or other

advertising purposes.  Any reference to Plaintiff's mark were collateral in nature.  Defendant has

never sold any product bearing the mark Sound Choice or Slep-Tone.  Defendant has never used

the Plaintiff's marks for advertising or otherwise to suggest that any performance was endorsed

or otherwise sponsored by Plaintiff.  The patrons of Defendant are not the same consumers that

would purchase the products of the Plaintiff and therefore there is no likelihood of confusion

with Plaintiff customers.  Defendant's patrons purchase food and drink from the Defendant and

nothing else.


VI.     Sixth Affirmative Defense


In the alternative, Plaintiff's claims are barred based upon Descriptive fair use as an

affirmative defense.  Defendant is not in the business of selling or otherwise producing karaoke

tracks.  Defendant has never sold or otherwise distributed karaoke tracks.  Any showing of

Plaintiff's mark by Defendant's contractor(s) in commerce or otherwise was done purely to

credit the producer of the tracks.  Defendant has never asserted that they were the producer of the

tracks.  The patrons of Defendant are not the same consumers that would purchase the products

of the Plaintiff and therefore there is no likelihood of confusion with Plaintiff customers. Defendant has never used any of Plaintiff's marks for advertising or sponsorship purposes in any way.

VII.    Seventh Affirmative Defense

Plaintiff's claims are barred due to the fact that Plaintiff's purported SOUND CHOICE mark for use in entertainment services is invalid and/or unenforceable.

VIII.   Eighth Affirmative Defense

Plaintiff cannot demonstrate that their rights in the purported SOUND CHOICE mark have been damaged or harmed.

Defendants reserve the right to state additional affirmative defenses upon the further determination of the same.

COUNTERCLAIM

Counterclaim Plaintiff, Elwood Enterprises Inc., individually and on behalf of those similarly situated("Counterplaintiffs") in support of their counterclaim against Counterclaim Defendant Slep-Tone (hereafter "Slep") allege as follows:

PARTIES

1. Counter Plaintiff Elwood Enterprises Inc., is an Illinois Corporation who principal place of business is at 6666 N. Northwest Highway, Chicago, Illinois.

2. Slep is a North Carolina corporation having its principal place of business at 14100 South Lakes Drive in Charlotte, North Carolina.

JURISDICTION AND VENUE

3. This counterclaim arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Lanham Act, 15 U.S.C. §§ 1051 et seq., The Sherman Act, 15 U.S.C. §§ 1- 7, The Clayton Act, 15 U.S.C. §§ 12-27, and the common law of the State of Illinois.

4. This Court has subject matter jurisdiction over this counterclaim under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367.

5. This Court has jurisdiction over the Counterclaim Defendant Slep by virtue of among other bases, their commission of wrongful acts within the State of Illinois, all commensurate with the United States and Illinois Constitutions and by virtue of their having filed their Complaint in this Court so as to submit themselves to the jurisdiction and process of this Court.

## RELEVANT FACTUAL BACKGROUND

6. Slep-Tone is engaged in a nationwide litigation campaign. It has filed more than fifty (50) cookie cutter lawsuits, including this one, which it filed against the Defendant to coerce it into terminating the karaoke services of those KJs not purchasing Slep's products.

7. Slep-Tone manufactures and distributes compact discs ("CDs") containing music to popular songs along with data that displays the song lyrics on a video screen when the tracks are played. According to Slep-Tone, karaoke jockeys (or "KJs") have unlawfully copied the CDs and are using the copied music to perform karaoke shows and, in the course of doing so, are displaying Slep-Tone's SOUND CHOICE trademark without Slep-tone's consent.

8. However, rather than filing *copyright infringement* actions Slep-Tone is filing *trademark infringement* suits. These lawsuits, including this one, are based solely upon the alleged display of the SOUND CHOICE trademark on video screens during karaoke shows.

9. Slep-Tone has become the Righthaven of trademarks. Slep-Tone has filed numerous lawsuits, apparently with little or no pre-filing investigation and no warning. In true Righthaven fashion, Slep-Tone has filed its lawsuits *en masse* for the purpose of coercing settlements rather than protecting legitimate intellectual property rights.

10. Slep-Tone is obviously banking on the fact that it would be far less expensive for each defendant to settle the case than to fight Slep-Tone. This is perhaps best evidenced by the fact that none of Slep-Tone's lawsuits have proceeded to trial and few have proceeded past the initial pleading stage.

11. Slep-Tone began its operation for legal trolling by filing for a trademark with the United States Patent and Trademark Office, (hereafter "USPTO").

12. On or about November 29, 2011 Slep published for opposition with regards to Trademark No. 4,099,052 and subsequently registered the mark on February 14, 2012.

13. On information and belief, Slep provided information under oath on its applications stating that Slep had used the mark in conducting entertainment exhibitions in the nature of karaoke shows and that their first use in commerce was on or about July 21, 2010.

14. On or about November 29, 2011 Slep published for opposition with regards to Trademark No. 4,099,045 and subsequently registered the mark on February 14, 2012.

15. On information and belief, Slep provided information under oath on its applications stating that Slep had used the mark in conducting entertainment exhibitions in the nature of karaoke shows and that their first use in commerce was on or about July 21, 2010.

16. On information and belief, Slep has at no time participated or otherwise conducted an entertainment exhibition, specifically a karaoke show.

17. Based upon Slep's Complaint, Slep only maintains five employees for its entire distribution enterprise.

18. Slep's false statements to the USPTO were made to defraud and otherwise fraudulently obtain the trademark registration in order to ensue with the current litigation with which it is involved.

19. Shortly after obtaining the trademark, Slep began an orchestrated litigation plan to defraud and otherwise extort money from legitimate karaoke operators and the venue at which they perform.

20. Slep has since the time of registration sent threatening letters to both karaoke operators and their venues threatening lawsuits if the parties failed to purchase their products or otherwise allow random audits of all karaoke operators affiliated with the subject businesses.

21. Slep further threatened karaoke operators with lawsuits if any refused to allow Slep to audit or otherwise review all media owned by the KJ.

22. Slep further attempted to defraud the KJs by offering to sell them a license for a gem series of karaoke tracks on a payment plan in exchange for signing an agreement whereby Slep would be allowed to audit all digital media at any time.

23. Slep further threatened venues with lawsuits if the venue would not force any subcontracted KJs to submit to an audit.

24. In the alternative, Slep offered avoidance of any lawsuits if the venues agreed to only hire Slep approved KJs for performance at their properties.

25. Since the time of filing this Complaint against the Counter Plaintiffs, Slep has threatened or initiated a cause of action against dozens of other venues.


COUNT I

Declaratory Judgment of Invalidity and Unenforceability of Purported Trademark Rights Due to Fraudulent Procurement of Registration


26. Counter Plaintiffs repeats and realleges the allegations contained in paragraph 1-25.

27. This is a claim for declaratory judgment arising under the Declaratory Judge Act, 28 U.S.C. §2201.

28. Slep purports to own the rights in and to the SOUND CHOICE trademark, and have asserted those purported rights as grounds for their trademark infringement and deceptive trade practices claims asserted against the Counter Plaintiffs.

29. Any rights which Slep may have had in the purported SOUND CHOICE trademark are invalid and unenforceable due to Slep's commission of fraud before the USPTO. Slep's statement under oath that the SOUND CHOICE Mark was used in commerce as of July 21, 2010 for conducting entertainment exhibitions in the nature of karaoke shows was false, Slep knew that the statement was false and the statement was material in that the USPTO would not have accepted any declarations without the false statement. Accordingly, Counter Plaintiffs are entitled to a declaratory judgment that Slep's purported SOUND CHOICE mark is invalid and unenforceable as a result of Slep's commission of fraud before the USPTO.

30. An actual and justiciable controversy exists between the Counter Plaintiffs and Slep with respect to the alleged infringement by Counter Plaintiffs of the SOUND CHOICE trademark as alleged by Slep. Accordingly, declaratory relief is both appropriate and necessary to establish that said purported trademark rights of Slep are invalid and unenforceable against Counter Plaintiffs.

COUNT II

Declaratory Judgment of Non-Infringement of Purported Trademark Rights

31. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-30.

32. This is a claim for declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. § 2201.

33. Slep purports to own the right in and to the SOUND CHOICE trademark and have asserted those purported rights as grounds for their trademark infringement, unfair competition, and deceptive trade practices claims asserted against Counter Plaintiffs.

34. Even if Slep possessed any valid rights in the SOUND CHOICE trademark at the time of any use by the Counter Plaintiffs, the use of the trademark cannot constitute infringement or deceptive trade practices because there is no likelihood of confusion between Counter Plaintiffs' and Slep's use of the mark.

35. Counter Plaintiffs services offered in association with the mark are completely different than the products offered by Slep. Counter Plaintiff's offer food and beverage products and services whereas Slep sell karaoke tracks to KJ's for use in performances. The customers of Slep are not the same customers of the Counter Plaintiffs.

36. No actual confusion exists or has occurred between Counter Plaintiff's use of the trademark and Slep's use of the trademark.

37. In view of the facts alleged above, no likelihood of confusion exists between the Counter Plaintiff's use of the trademark and Slep's use of the mark. Accordingly, Counter Plaintiffs are entitled to a declaratory judgment that its use of the SOUND CHOICE mark has not infringed or violated and does not infringe or violate, any rights which Slep may have purported in their SOUND CHOICE mark.

38. An actual and justiciable controversy exists between the Counter Plaintiffs and Slep with respect to the alleged infringement by Counter Plaintiffs of the SOUND CHOICE trademark as alleged by Slep. Accordingly, declaratory relief is both appropriate and necessary to establish that said purported trademark rights of Slep are invalid and unenforceable against Counter Plaintiffs.

COUNT III

Cancellation of U.S. Trademark No. 4,099,045

39. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-38.

40. This is a claim for cancellation of U.S. Trademark Registration No. 4,099,045 arising under 15 U.S.C. §1064.

41. On information and belief, Slep submitted a Declaration of Use of Mark in Commerce under §8 to the USPTO stating that the mark was in use in commerce in relation to conducting entertainment exhbitions in the nature of karaoke shows beginning on July 21, 2010.

42. The statement that the mark was used in commerce in relation to conducting entertainment exhibitions in the nature of karaoke shows beginning on July 21, 2010 was false because Slep nor any of its agents were using the mark for the purpose of conducting karaoke shows nor have they ever been in the business of conducting entertainment karaoke shows.

43. The statements made to the USPTO were made with the knowledge that the statements were false, or were made recklessly as a positive assertion, and without knowledge of the trust of such statement.

44. Said false statement were made with the intention to induce the USPTO to issue the registration of for the mark and relying upon said false statement, the USPTO did in fact place the Registration on the Principal Register.

45. In view of the foregoing, the Registration is subject to cancellation pursuant to 15 U.S.C. § 1064 because it was obtained fraudulently.

46. Counter Plaintiffs have been and will continue to be damaged by the maintenance of the Registration No. 4,099,045 on the Principal Register because the ownership of the mark has been asserted as grounds for Slep's unfounded claims of trademark infringement and deceptive trade practices against the Counter Plaintiffs.

COUNT IV

Cancellation of U.S. Trademark No. 4,099,052

47. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-46.

48. This is a claim for cancellation of U.S. Trademark Registration No. 4,099,052 arising under 15 U.S.C. §1064.

49. On information and belief, Slep submitted a Declaration of Use of Mark in Commerce under §8 to the USPTO stating that the mark was in use in commerce in relation to conducting entertainment exhbitions in the nature of karaoke shows beginning on July 21, 2010.

50. The statement that the mark was used in commerce in relation to conducting entertainment exhibitions in the nature of karaoke shows beginning on July 21, 2010 was false because Slep nor any of its agents were using the mark for the purpose of conducting karaoke shows nor have they ever been in the business of conducting entertainment karaoke shows.

51. The statements made to the USPTO were made with the knowledge that the statements were false, or were made recklessly as a positive assertion, and without knowledge of the trust of such statement.

52. Said false statement were made with the intention to induce the USPTO to issue the registration of for the mark and relying upon said false statement, the USPTO did in fact place the Registration on the Principal Register.

53. In view of the foregoing, the Registration is subject to cancellation pursuant to 15 U.S.C. § 1064 because it was obtained fraudulently.

54. Counter Plaintiffs have been and will continue to be damaged by the maintenance of the Registration No. 4,099,052 on the Principal Register because the ownership of the mark has been asserted as grounds for Slep's unfounded claims of trademark infringement and deceptive trade practices against the Counter Plaintiffs.


COUNT V

Fruadulent Procurement of Registration Under 15 U.S.C. § 1120

55. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-54.

56. Slep's submission of the false declaration to the USPTO constituted procurement of a registration by a false or fraudulent declaration or representation, in violation of 15 U.S.C. § 1120.

57. Counter Plaintiffs have been damaged by the submission of false and fraudulent declarations by at the least the following: (i)incurring attorney fees and costs associated with their defense of this litigation; (ii)having their reputation impuned by the multiple posts published throughout the Internet, and "blogosphere," and inability to contract new business based upon a clouded name amongst businesses and others.

58. Slep's false and fraudulent representations to the USPTO have caused irreparable harm, damage and injury to the Counter Plaintiffs.

COUNT VI

Violation of the Sherman Act and Clayton Act.

59. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-58.

60. This is a claim for violations of the Sherman Act, 15 U.S.C. §§ 1- 7, and the Clayton Act, 15 U.S.C. §§ 12-27.

61. Slep through intimidation attempted to coerce venue owners to only hire karaoke jockeys who were licensed exclusively through Slep.

62. Slep threatenedd litigation if venue owners failed to agree to their terms and otherwise terminate KJs who refused to buy their products.

63. Kurt Slep, the owner and CEO of Slep made statements to a conference asserting that he would be happy to split the market share of karaoke throughout the U.S.

64. Mr. Slep further asserted Counter defendant was initiating lawsuits to drive sales.

65. Slep, through its agents threatened and otherwise coerced venue owners to only hire KJs specifically authorized by Slep based upon their contracting to use Slep's products.

66. The actions of Slep are meant to otherwise drive up the price of services allowing them to charge additional costs for their products and otherwise eliminate the ability of other companies to enter into the karaoke accompaniment track market.

67. The actions of Slep hinder trade and represent unfair competition among those persons providing karaoke services or selling karaoke tracks.

68. Sleps actions seek to hinder competition and otherwise restrain trade.

69. As a result of Slep's actions, Counter plaintiffs have been damaged by, (i) loss of business revenue (ii) loss of reputation within their community, and (iii) legal fees incurred in defending a baseless claim.

## COUNT VII

### Abuse of Process

70. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-70.

71. Slep has brought the present suit against the Counter Plaintiffs in an attempt to threaten, harass, or otherwise intimidate Counter Plaintiffs into buying its products or hire those KJs that have signed contracts with Slep.

72. Based upon the above, Slep has no viable cause of action against the Counter Plaintiffs.

73. Slep brought this suit in the hopes that a settlement with the ultimate sale of its products would be cheaper for the Counter Plaintiffs than the cost of litigation.

74. Slep has brought similar cases to this throughout the country.

75. Kurt Slep, the owner and CEO of Slep-Tone has openly admitted at conferences and the like that Slep is bringing suits in order to sell disc and other karaoke tracks.

76. This sale of products is the sole purpose of the litigation.

77. The sale of products is a result that Slep could not otherwise achieve without litigation.

78. The litigation is brought simply to harass or otherwise annoy and coerce Counter Plaintiffs into the purchase of Slep's products and to terminate KJs that refuse to enter into agreements with Slep.


## COUNT VIII

### Fraud

79. Counter Plaintiffs restate and realleges the allegations contained in paragraphs 1-79.

80. Slep further threatened Counter Plaintiffs with suits based upon a trademark that was registered based upon false assertions to the USPTO.

81. Slep further threatened suits if Counter Plaintiffs refused to terminate contract with non-Slep customers and instead hire KJs who had entered into agreements with Slep.

82. Slep threatened suits based upon unfounded allegations of infringement by anonymous contracted KJs knowing that there was no basis to their claims.

83. Slep knew at all times that the statements made to Counter Plaintiffs were untrue.

84. As a result of Slep's actions, Counter plaintiffs have been damaged by, (i) loss of business revenue (ii) loss of reputation within their community, and (iii) legal fees incurred in defending a baseless claim.


WHEREFORE, the Counter Plaintiffs, Elwood Enterprises Inc., individually and on behalf of those similarly situated pray that this Court grant it the following relief:

A. A declaration that (i) Slep's purported rights in and to the SOUND CHOICE trademark are invalid and unenforceable due to Slep's commission of fraud on the USPTO through the knowing submission of a false declaration; and (ii)even if Slep possessed any valid, enforceable rights in the SOUND CHOICE trademark, Counter Plaintiffs use of the trademark does not constitute infringement or deceptive trade practices;

B. An order directing the United States Patent and Trademark Office to cancel U.S. Trademark Registration No. 4,099,045 and 4,099,052 under 15 U.S.C. § 1064, on the basis that said registration was maintained through the commission of fraud;

C. A finding that Slep violated 15 U.S.C. § 1120 by the submission of a false and fraudulent declaration to the USPTO;

D. An award to Counter Plaintiffs of monetary damages in an amount to be fixed by the Court in its discretion as just;

E.  A finding that this is an exceptional case under 15 U.S.C. § 1117(a), together with an
    award to Counter Plaintiffs of their attorneys' fees and its costs and expense of litigation
    pursuant to 15 U.S.C. § 1117(a) and (b); and

F.  Such other and further relief as the Court may deem just, proper, and equitable under the
    circumstances.


Respectfully submitted,


Dated this 29th day of May, 2012.


The Law Offices of Matthew M. Saffar, LLC


By: ___/s/Matthew M. Saffar_____
Matthew M. Saffar (Illinois Bar No. 6295406)
800 E. Northwest Highway, Suite 1095
Palatine, IL 60074
Tel: (847)259-6647
Fax: (847)259-6652
Email: saffarlaw@gmail.com
Attorney for Defendant Elwood Enterprises Inc.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on this 29th day of May, 2014, he electronically filed **Defendant's Answer to Complaint, Affirmative Defenses and Counter Claims** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Vivek Jayaram

Jayaram Law Group

33 N. LaSalle St., Suite 2900

Chicago, IL 60602

/s/ Matthew M. Saffar