# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Slep-Tone Entertainment Corp., <br><br> Plaintiff, <br><br> v. <br><br> Elwood Enterprises, Inc., <br><br> Defendant. | Case No. 13 C 7346 <br><br> Judge John Robert Blakey |
| Elwood Enterprises, Inc., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> Slep-Tone Entertainment Corp., <br><br> Counterclaim-Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff and Counterclaim-Defendant Slep-Tone Entertainment Corporation ("Slep-Tone") has brought trademark infringement and unfair competition claims against Defendant and Counterclaim-Plaintiff Elwood Enterprises, Inc. ("Elwood"). These claims arise from Elwood hiring karaoke operators who allegedly displayed Slep-Tone's "Sound Choice" mark without authorization. Complaint [1], ¶¶ 1-2.

Elwood unsuccessfully moved to dismiss the Complaint [29]. Elwood then answered the Complaint, asserting several affirmative defenses and counterclaims [35]. In its counterclaims, Elwood seeks a declaration that Slep-Tone's trademarks are invalid and unenforceable because they were procured by fraud (Count I) and a

declaration of non-infringement (Count II). Elwood also seeks cancellation of Slep-Tone's trademarks (Counts III and IV) and brings claims of fraudulent procurement of registration (Count V), violations of the Sherman and Clayton Acts (Count VI), abuse of process (Count VII), and fraud (Count VIII).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Slep-Tone has moved [41] to dismiss Counts I, III, VI, V, VI, VII and VIII (all the Counts but Count II) of Elwood's counterclaim. For the following reasons, the motion is granted in part and denied in part.

## I. Legal Standard

Under Rule 12(b)(6), this Court must construe the Complaint [1] in the light most favorable to Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in their favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Likewise, the Court must assume the truth of any facts alleged in a counterclaim and view them in the light most favorable to the counterclaimant. *Cozzi Iron & Metal v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). It thus is proper for this Court to consider the United States Patent and Trademark

Office's ("PTO") official records. *Ennega v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

To survive Defendant's motion under Rule 12(b)(6), the Complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. Facts

### A. Slep-Tone's Claims

Elwood operates the Mecca Supper Club, a club where karaoke services are provided by third party suppliers called karaoke operators. Complaint [1] ¶ 14. Patrons sing songs while following along with karaoke tracks. *Id.* at ¶ 15. A "karaoke accompaniment track" includes not only the songs recorded in the accompaniment music, but also the lyrics and graphics displayed so that participants can follow along as they sing. *Id.* at ¶¶ 16-17. Elwood contracts with karaoke operators who supply it with the karaoke accompaniment tracks. *Id* at ¶ 14. Slep-Tone manufactures karaoke accompaniment tracks and "generates revenue by selling and licensing authentic original materials on compact discs to the consumers of its products." These consumers include karaoke jockeys who are then hired by venues such as the Mecca Supper Club. *Id.* at ¶ 41.

3

Slep-Tone owns Trademark Registration Nos. 1,923,448 and 4,099,045 for the trademark Sound Choice (shown below) and Trademark Registration Nos. 2,000,725 and 4,099,052 to display this trademark. *Id.* at ¶¶ 11-12.



Slep-Tone contends that Elwood knows that the karaoke jockeys it hires use or duplicate karaoke accompaniment tracks that display the Sound Choice mark without authorization from Slep-Tone. *Id.* at ¶¶ 19-25. Yet Elwood continued to hire these jockeys who infringe on Slep-Tone's mark. *Id.* at ¶ 37. That is because Elwood, according to Slep-Tone, profits from this misconduct. Elwood, for example, pays below market prices for karaoke jockeys. *Id.* at ¶ 45. Conversely, Slep-Tone is injured. Slep-Tone spends "vast sums of money to re-record popular songs in karaoke format," yet "has experienced significantly reduced sales of its legitimate products" from Elwood's infringement. *Id* at ¶¶ 39, 49.

### B. Elwood's Counterclaims

Elwood argues that Slep-Tone's rights to the Sound Choice mark are invalid and unenforceable. Slep-Tone procured the trademark from the PTO by falsely representing that the mark had not been "used in commerce," a requirement for a trademark under 15 U.S.C. §1051(a)(1). [35] ¶¶ 29, 42-44, 49-52. Elwood also alleges that Slep-Tone violated the Sherman and Clayton Acts by using the threat

of litigation to intimidate venue owners into hiring only those karaoke jockeys licensed through Slep-Tone. *Id*. at ¶¶ 61-62. These actions drive up the price of service, allow Slep-Tone to charge more and eliminate competitors from entering the karaoke accompaniment track market. *Id*. ¶ 66. Elwood has lost revenue and suffered reputational injury as a result. *Id*. at ¶ 69.

### III. Analysis

#### A. Trademark Counterclaims (Counts I, III, IV and V)

In Counterclaim Counts I, III, IV and V, Elwood alleges that Slep-Tone fraudulently procured Trademark Registration Nos. 4,099,052 and 4,099,045. Slep-Tone's motion to dismiss these counts is denied.

A claim for fraudulent procurement of a trademark requires: "(1) [a] false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the intention to induce action or refrain from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) damages proximately resulting from such reliance." *Thomas Indus., Inc. v. L.E. Mason Co.*, No. 90 C 4099, 1991 WL 83821, at *2 (N.D. Ill. May 12, 1991) (quoting *San Juan Products, Inc. v. San Juan Pools of Kansas, Inc.*, 849 F.2d 468, 472 (10th Cir. 1988)). The party challenging the validity of a trademark must show that the trademark applicant was deliberately attempting to mislead the PTO in its application. *Money Store v. Harriscorp Fin., Inc.,* 689 F.2d 666, 670 (7th Cir. 1982). *See also* 1 J. Thomas McCarthy, McCarthy on Trademarks And Unfair Competition § 31.62-68 (4th ed.2003).

5

The Lanham Act requires that a mark be both distinctive and used in commerce in order for it to be eligible for trademark protection. Specifically, the Lanham Act defines "use in commerce" as the bona fide use of a trademark or service mark in either interstate or foreign commerce in the ordinary course of trade. The statutes states:

> [A] mark shall be deemed to be in "use in commerce" … when it is used or displayed in the sale or advertising of services and the services are rendered in commerce … and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127. An applicant does not need to be the one who uses the trademark itself; rather, the "use in commerce" requirement can be satisfied through use by an applicant's "related company." 15 U.S.C. § 1055. A "related company" means "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1127.

According to Elwood, when Slep-Tone applied for Trademark Nos. 4,099,052 and 4,099,045 on November 29, 2011, Slep-Tone stated that it had been using the Sound Choice trademark in commerce by "conducting entertainment exhibitions in the nature of karaoke shows" no later than July 21, 2010. [35] ¶ 29. Elwood argues that is false: Slep-Tone never held, let alone participated in, any karaoke show displaying the Sound Choice mark during that time. *Id.* These false representations are material, according to Elwood, because, without them, Slep-Tone could not have met the trademark application requirements. *Id.*

In moving to dismiss, Slep-Tone argues that its application, which is publicly available, confirms that the "use in commerce" requirement was met. Slep-Tone's licensees used the trademark; Slep-Tone never claimed that it satisfied the "use in commerce" requirement from its own use. [41] at 5. In its application, moreover, Slep-Tone provided and described photos of licensees (karaoke jockeys) providing services while displaying the mark. Trademark Application [41-1] at 2.

Multiple Courts in this District recently have decided motions to dismiss counterclaims in nearly identical actions also brought by Slep-Tone. *See Slep-Tone Entm't Corp. v. Teddy O'Brian's, Inc.*, No. 14 C 3570, 2014 WL 4783048, at *1 (N.D. Ill. Sept. 24, 2014) (Guzmán, J.); *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, No. 14 C 3577, 2014 WL 7235164, at *3-4 (N.D. Ill. Dec. 18, 2014) (Durkin, J.). Both cases involved the same trademarks, and trademark infringement and unfair competition claims. Both cases also involved nearly identical counterclaims, also brought by operators of commercial establishments that hired third party karaoke jockeys. In denying the motions to dismiss the trademark counterclaims, the Courts in *Teddy O'Brian's* and *Kalamata* reasoned that there was not enough information to determine whether Slep-Tone complied with the disclosure requirements because it is unclear what language is sufficient to disclose "use in commerce" through licensees. This Court sees no reason to depart from this analysis.

The PTO Trademark Manual of Examining Procedure ("TMEP") and the Rules of Practice in Trademark Cases, 37 C.F.R. § 2.38(b), govern disclosures that applicants are required to make to the PTO. They require that the party who

controls the nature and quality of the goods or services in connection with the mark be set forth as the applicant. The applicant should also state whether it has adopted and is using the mark through a related company.

The courts in *Teddy O'Brian's* and *Kalamata* analyzed the TMEP and its requisite disclosures for registering a mark fulfilling the "use in commerce" requirement through use of licensees. Specifically, if a mark is being used solely by a related company, then the relevant edition of the TMEP requires the applicant to disclose this fact in the application. *See* TMEP 7th ed. §§ 1201.03(a) (in effect when Slep-Tone filed its application) (a*vailable at* http://tess2.uspto.gov/tmdb/tmep_7ed/ (last visited April 7, 2015)). Section 1201.03(a) states that "the applicant should state in the body of the application" that it "has adopted and is using the mark through its related company (or equivalent explanatory wording)." *Id*. The PTO "accepts applications by parties who claim to be owners of marks through use by controlled licensees." *Id*. at § 1201.03(f). Also, the PTO "does not inquire about the relationship between the applicant and other parties … except when reference to another party clearly contradicts the applicant's verified statement that it is the owner of the mark or entitled to use the mark." *Id*. at § 1201.04.

Here, the only description of the mark in Slep-Tone's application is as "digital photographs of a performance of the services by a licensee." Trademark Application [41-1] at p. 2. At this early stage in the proceedings, this Court cannot say that Slep-Tone's statement alone is enough to determine whether the company met the "use in commerce" disclosure requirements in its application. The courts in *Teddy*

*O'Brian's* and *Kalamata* identified similar deficiencies in the record when denying prior motions to dismiss from Slep-Tone. *Teddy O'Brian's*, 2014 WL 4783048, at *2; *Kalamata,* 2014 WL 7235164, at *4.

Slep-Tone also argues that Elwood did not plead its fraudulent procurement claims with the specificity required by Rule 9(b). [41] at 7-8. Rule 9(b) requires Elwood to identify "the who, what, when, where, and how" of the acts. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 207 (7th Cir. 2001). This Court finds, as did the Courts in *Kalamata* and *Teddy O'Brian's*, that Elwood has met this pleading requirement. The "who" and "what" are satisfied by Elwood's allegations that Slep-Tone committed fraud by making material misrepresentations to the PTO. [35] ¶¶ 29, 41-45, 48-53. The "how" is Elwood's allegation that Slep-Tone misrepresented the mark as "used in commerce." *Id.* The "where" and "when" are Elwood's allegations that Slep-Tone made these misrepresentations on or about November 29, 2011, in its application to the PTO. *Id.* at ¶ 29. For these reasons, the fraudulent procurement counterclaims satisfy Rule 9(b) and further state a claim under Rule 12(b)(6).

### B. Antitrust Counterclaims (Count VI)

In Counterclaim Count VI, Elwood alleges that Slep-Tone violated the antitrust provisions of the Sherman Act, 15 U.S.C. §§ 1-7, and the Clayton Act, 15 U.S.C. §§ 12-27, by coercing venue owners through the threat of legal action to buy Slep-Tone's products and hire karaoke jockeys licensed by Slep-Tone. [35] ¶¶ 61-62. Elwood also alleges that Slep-Tone did this to drive up the price of services and

9

eliminate other companies from entering the karaoke track market. *Id*. at 66. Elwood claims that these actions constitute a *per se* violation of, or at least, an unreasonable restraint on trade under the Sherman and Clayton Acts. *Id*. at 67-68. Slep-Tone contends that these allegations fail to state a claim for relief under both Acts. [41] at 8. This Court finds the allegations insufficient.

Elwood cites Sections 1 to 7 of the Sherman Act, but grounds its antitrust claim only in Section 1. [35] ¶ 60. Section 1 makes it illegal to restrain trade or commerce through contracts, combinations or conspiracies. 15 U.S.C. § 1. Proof of a claim under Section 1 requires: "(1) a contract, combination, or conspiracy; (2) a resultant unreasonable restraint of trade in the relevant market; and (3) an accompanying injury." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012) (internal quotations omitted). Unilateral action is not a violation; allegations of concerted actions are required. *Id*. at 336. *Per se* violations refer to the types of practices, such as price-fixing agreements, "that would always or almost always tend to restrict competition and decrease output." *NCAA v. Bd. of Regents*, 468 U.S. 85, 104 (1984).

Here, Elwood asserts that Slep-Tone's attempt to control venues and karaoke jockeys through harassment and threat of litigation constitutes a *per se* violation of antitrust. [49] at 11. Elwood does not allege, however, that Slep-Tone participated in any type of agreement, let alone one that fixes prices. As such, Elwood fails to allege a *per se* violation.

Elwood's antitrust allegations also fail under a "rule of reason" standard. The rule requires the fact finder to weigh all circumstances of a case to determine if a restrictive practice should be allowed based on whether it imposes an "unreasonable restraint on competition." *County Materials Corp. v. Allan Block Corp.*, 502 F.3d 730, 735 (7th Cir. 2007). It requires a showing that the alleged violator has "market power" through an agreement that has produced adverse or anticompetitive effects within the relevant and specifically defined geographic market. *Menasha Corp. v. News Am. Mktg. In-Store, Inc.* 345 F.3d 661, 663 (7th Cir. 2004); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004).

Elwood asserts that venues will be forced to comply with Slep-Tone's internal auditing requirements in order to avoid the legal fees associated with potential law suits. [49] at 11. Elwood argues that Slep-Tone is trying to obtain control over karaoke services such that no other manufacturer of karaoke tracks can enter the market. *Id*. Here again, Elwood has failed to state a claim. Elwood neither alleges the existence of an agreement to restrain trade nor identifies a relevant market. Accordingly, its antitrust violation claims fail under the "rule of reason" analysis.

Last, Elwood alleges price discrimination under the Clayton Act, but only analyzes Section 13(a) of the Act. [35] ¶ 60. Section 13(a) prohibits price discrimination where the effect thereof might substantially "lessen the competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition" with relevant persons. 15 U.S.C. § 13(a). Three categories of

price discrimination may give rise to a §13(a) claim: primary line, secondary line and tertiary line. *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176 (2006). Primary line discrimination includes conduct such as predatory pricing that involves injury to competition at the level of the seller and its direct competitors. *Id*. Secondary line discrimination involves injury to competition among the seller's customers. *Id*. And tertiary line discrimination involves injury to competition at the level of the purchaser's customers. *Id*.

Elwood argues that Rule 12(b)(6) allows this Court to infer that its claims allege all three types of price discrimination. [49] at 13. The Counterclaim lacks allegations, however, about Slep-Tone's pricing. Indeed, while this Court must make all reasonable inferences in favor of Elwood, Elwood has not alleged any facts from which an inference of price discrimination could be drawn. *See Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000) ("plaintiffs [do not] set forth facts sufficient to create an inference that defendant had enough market power to create a monopoly … in the relevant market"). At bottom, Elwood has not properly alleged that Slep-Tone did anything that falls under any of the three categories of price discrimination, so Count VI must be dismissed.

### C. Abuse of Process (Count VII)

In Counterclaim Count VII, Elwood alleges that Slep-Tone's suit represents an abuse of process. [35] ¶ 71. Under Illinois law, an abuse of process claim requires: "(1) the existence of an ulterior motive or purpose; and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings."

*Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). The first element requires a showing that proceedings were instituted "for an improper purpose such as extortion, intimidation, or embarrassment." *Id*. The second element requires a showing "that the process was used to accomplish some result beyond the purview of the process." *Id*. In this context, "process" refers to a document or statement issued by a court under its official seal. *See Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 747 (N.D. Ill. 2012). As such, it must be shown that the court's process was used to compel the opposing party to do something it could not otherwise legally be compelled to do. *See Kumar*, 820 N.E.2d at 1174-75.

Elwood argues that Slep-Tone brought this lawsuit to force Elwood to buy only Slep-Tone's products and hire only Slep-Tone's karaoke jockeys. [35] ¶ 71. Elwood also argues that Slep-Tone instituted this lawsuit to pressure it into contracting with certain karaoke operators. *Id*. However, Elwood has not claimed that Slep-Tone used this Court's process to force it to do something it was not legally required to do. Without more, even the filing of a lawsuit with malicious intent or the purpose to harass, does not constitute abuse of process. *Commerce Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 748 (Ill. App. Ct. 1994). Elwood has not provided something more here. Thus, Slep-Tone's motion to dismiss Count VII of Elwood's Counterclaim is granted.

### D. Common Law Fraud (Count VIII)

In Counterclaim Count VIII, Elwood alleges that Slep-Tone is liable for common law fraud. [35] ¶¶ 80-83. In Illinois, the elements of common law fraud

13

are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the statement; and (5) plaintiff's damages from reliance on the statement." *Tricontinental Indus., Ltd. V. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). If the plaintiff does not allege that it relied on the misrepresentations at issue, there can be no common law fraud. *See People ex rel. Peters v. Murphey-Knight*, 618 N.E.2d 459, 465 (Ill. App. Ct. 1993).

Elwood alleges that Slep-Tone is liable for common law fraud because Slep-Tone falsely represented that it owned valid trademarks in order to induce Elwood into buying Slep-Tone's products and hiring only those karaoke operators who are licensed through Slep-Tone. [35] ¶¶ 80-83. Elwood does not allege, however, that it hired exclusively Slep-Tone karaoke jockeys or purchased exclusively Slep-Tone products as a result of reliance on the misrepresentations. *See e.g., Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 9 (Ill. App. Ct. 2001) (Fact issues relating to salesperson's alleged statements to buyer about the condition of a car precluded summary judgment on common-law fraud claim of misrepresentation). Because Elwood does not allege that it relied on these misrepresentations, there can be no common law fraud. Slep-Tone's motion to dismiss Count VIII of Elwood's counterclaims is granted.

IV. **Conclusion**

For these reasons, Slep-Tone's motion to dismiss Counts I and III to VIII of Elwood's Counterclaim [41] is denied in part and granted in part. The motion is

14

denied as to Counterclaim Counts I, III, IV and V. The motion is granted as to Counterclaim Counts VI, VII, and VIII. Only Count VIII is dismissed with prejudice. Elwood is given leave to amend Counts VI and VII by May 11, 2015 to the extent counsel can do so consistent with their obligations under Rule 11.

This case is set for a status hearing on May 12, 2015 at 9:45 a.m. in Courtroom 1725.

Dated: May 1, 2015

Entered:

_____
John Robert Blakey
United States District Judge